H. FIELDS YOUNG, JR., PARIS L. YELTON, LAMAR L. YOUNG AND C. FRANKLIN HARRY, JR. v. BENJAMIN R. ROBERTS, AS COMMISSIONER OF BANKS OF THE STATE OF NORTH CAROLINA; J. CLINT NEWTON AND SAM M. SCHENCK.

(Filed 24 February, 1960.)

1. **Banks and Banking § 1—**

    Where there is nothing in the written report of the Commissioner of Banks or the resolution of the State Banking Commission disclosing that their approvals of a proposed banking corporation were conditional, the findings of the trial court to the effect that such approvals were unconditional will not be disturbed.

2. **Same—**

    A banking corporation is solely a creature of statute, and the statutory prerequisites for the incorporation of a bank must be followed. G.S. 53-2 through G.S. 53-5.

3. **Same—**

    The authority of the Commissioner of Banks to refuse to issue his certificate of approval of a certificate of incorporation of a banking institution, which is in all respects regular and in compliance with statute, is a limited, discretionary authority and must be based on a finding adverse to the proposed banking corporation in respect of one or more of the legislative standards defined in G.S. 53-4.

4. **Same—**

    Construing G.S. 53-4 and G.S. 53-92 *in pari materia* any decision made by the Commissioner of Banks upon application for approval of a certificate of incorporation is subject to review by the State Banking Commission upon application of any adversely affected interested person,

but the Commission has no authority to direct the Commissioner to refuse to issue a certificate of approval except on a finding adverse to the proposed banking corporation in respect of one or more of the legislative standards defined in G.S. 53-4, and the Commission must act in good faith and not capriciously or arbitrarily.

**5. Same—**

Neither the Commissioner of Banks nor the State Banking Commission is authorized to require, as a prerequisite for the issuance of a certificate of approval, that a proposed banking corporation should obtain insurance of its deposits with the Federal Deposit Insurance Corporation, although its inability to obtain such insurance may be considered with other relevant facts and circumstances in determining whether a proposed banking corporation meets the statutory standards.

**6. Same—**

Where the approval of a certificate for a proposed bank by the Commissioner of Banks and the State Banking Commission is not consummated by the filing of the certificate in the Office of the Secretary of State, the persons seeking to incorporate the bank have no vested right in the approvals and such approvals do not preclude the Commissioner of Banks or the State Banking Commission, upon demand for the approval of the certificate some three years later, from determining whether the proposed banking corporation then meets the statutory requirements.

**7. Same: Mandamus § 1—**

Where the Commissioner of Banks has refused a demand upon him that he certify his approval of a certificate of incorporation of a proposed banking institution, the remedy of the incorporators is by application for review by the State Banking Commission, G.S. 53-92, and where this procedure has not been followed *mandamus* will not lie to compel the Commissioner of Banks to certify his approval.

**8. Mandamus § 1—**

*Mandamus* may not be used as a substitute for an appeal but may be issued only in the exercise of an original jurisdiction.

**9. Same—**

*Mandamus* lies to enforce a clear legal right only when there is no other adequate remedy available.

RODMAN, J., took no part in the consideration or decision of this case.

APPEAL by defendant Commissioner of Banks from *Williams, J.,* second week of June 15, 1959 Regular Civil Term, of WAKE, docketed and argued as No. 461 at Fall Term, 1959.

Plaintiffs' action is for a writ of *mandamus* to compel defendant Benjamin R. Roberts, as Commissioner of Banks, to certify to the Secretary of State that a proposed new banking corporation, if formed, will be lawfully entitled to commence the business of banking.

Plaintiffs and defendants J. Clint Newton and Sam M. Schenck are the six named incorporators and subscribers to stock of a banking corporation proposed to be formed in Shelby, North Carolina, under the name "The Commercial Bank and Trust Company," as set forth in a certificate of incorporation executed and acknowledged by plaintiffs and by J. Clint Newton on March 17, 1955, which, on March 18, 1955, was delivered to the Secretary of State and by him transmitted forthwith to the then Commissioner of Banks, W. W. Jones.

On March 17, 1955, plaintiff Young, as requested and instructed by Jones, made application on behalf of the proposed banking corporation, for insurance of its deposits, to the Federal Deposit Insurance Corporation.

Jones submitted to the State Banking Commission at its meeting on June 9, 1955, a written report dated June 4, 1955, which, after setting forth factual data disclosed by his investigation, concludes: "I hereby certify my approval of the charter of this proposed new bank to the Secretary of State, subject to the approval or disapproval of such action by the State Banking Commission."

The Commission took no action at its meeting on June 9, 1955; but at its meeting on July 20, 1955, after hearing arguments in behalf of both applicants and opponents, the Commission adopted a resolution "that the recommendation of the Commissioner of Banks, certifying his approval to the charter of The Commercial Bank and Trust Company, Shelby, North Carolina, to the Secretary of State" be approved.

Plaintiffs, with the assistance and cooperation of Jones, endeavored to obtain insurance of deposits of the proposed bank with the Federal Deposit Insurance Corporation. Applications for such insurance, on each of three occasions, were disapproved. In each new application, plaintiffs undertook to overcome the objections indicated as grounds for disapproval of the preceding application.

Jones advised plaintiffs that, if they requested, he would certify his approval of the proposed banking corporation to the Secretary of State so that, upon issuance of the charter, the corporation could institute legal action against the Federal Deposit Insurance Corporation to compel the approval of their said application for insurance. He did not so certify and nothing in the record indicates he was requested to do so. The reason for holding the certification of his approval in suspense was to postpone the commencement of the six months period, prescribed by G.S. 53-5, within which a *chartered* banking corporation is required to organize and commence business.

W. W. Jones died. Benjamin R. Roberts became Commissioner of Banks on November 12, 1957.

On or about October 27, 1958, plaintiffs made demand on defendant Commissioner of Banks that he certify to the Secretary of State that the proposed banking corporation, if formed, will be lawfully entitled to commence the business of banking. Their said demand was made shortly after they were advised by the Federal Deposit Insurance Corporation that their present application for insurance of deposits would not be further processed or considered unless and until the State of North Carolina issued a charter for the proposed banking corporation. Plaintiffs, upon the refusal of defendant Commissioner of Banks to comply with their said demand, instituted the present action.

Plaintiffs, based on the approval of W. W. Jones, former Commissioner of Banks, as stated in his said report of June 4, 1955, and the approval of the State Banking Commission, as stated in its said resolution of July 20, 1955, alleged they have a clear legal right to have the defendant Commisioner of Banks issue such certificate of approval to the Secretary of State, and that they "are without an adequate remedy at law."

Defendant Commissioner of Banks, answering, denied that plaintiffs were entitled to such writ of *mandamus*. With reference to plaintiffs' factual allegations, he denied that said approvals by the Commissioner of Banks and the State Banking Commission in 1955 were unconditional, asserting that they were conditioned on approval by the Federal Deposit Insurance Corporation of plaintiffs' application for insurance of the deposits of the proposed banking corporation. He asserted further that the group now seeking certification of the charter "is not the same group as originally sought approval of an application to form a new bank."

The parties waived jury trial; and the court, based upon findings of fact and conclusions of law set forth therein, entered judgment providing:

> "NOW, THEREFORE, IT IS ORDERED, ADJUDGED AND DECREED that the defendant Benjamin R. Roberts be, and he hereby is ordered and directed as Commissioner of Banks to forthwith certify to the Secretary of State of North Carolina that the proposed banking corporation, the Commercial Bank and Trust Company, Shelby, North Carolina, if formed, will be lawfully entitled to commence the business of banking and to return to the Secretary of State, with such certification, the cer-

tificate of incorporation of said proposed banking corporation, together with any amendments thereto."

Defendant Commissioner of Banks excepted and appealed.

*Poyner, Geraghty, Hartsfield & Townsend and Arch. E. Lynch, Jr., for plaintiffs, appellees.*

*Attorney General Seawell and Assistant Attorney General McGalliard for defendant, Commissioner of Banks, appellant.*

BOBBITT, J. While it appears plainly that plaintiffs and W. W. Jones, former Commissioner of Banks, contemplated that the proposed banking corporation would obtain insurance of its deposits with the Federal Deposit Insurance Corporation before it commenced business, nothing in Jones' report of June 4, 1955, or in the Commission's resolution of July 20, 1955, states that the approvals *then given* were otherwise than unconditional. Hence, without reviewing the evidence, the assignments of error directed to the court's findings of fact to the effect that such approvals were unconditional are overruled.

The judgment contains no findings of fact bearing upon whether plaintiffs constitute "the same group as originally sought approval of an application to form a new bank." Pertinent to this subject, the record shows: 1. Plaintiffs alleged that J. Clint Newton and Sam M. Schenck, two of the six persons named as incorporators, "declined to join and unite herein as parties plaintiff," and were joined as defendants "to the end that all matters in controversy may be fully and finally determined." (The record does not show that defendants Newton and Schenck, or either of them, were served with process; nor does it show that any appearance was made or pleading filed in behalf of either of them.) 2. Sam M. Schenck died on February 10, 1959. 3. A reapplication on July 30, 1958, for Federal Deposit Insurance Corporation approval was signed *only* by the present plaintiffs.

Uncontradicted evidence is to the effect that substantial changes in economic conditions in Cleveland County have occurred since 1955 on account of the location therein of new industries.

"A banking corporation is wholly a creature of statute, doing business by legislative grace, and the right to carry on a banking business through the agency of a corporation is a franchise which is dependent on a grant of corporate powers by the state, . . ." 9 C.J.S., Banks and Banking § 4; *Pue v. Hood, Comr. of Banks,* 222 N.C. 310, 22 S.E. 2d 896.

The prerequisites *for the incorporation* of a banking corporation

are set forth in G.S. 53-2 through G.S. 53-5, as amended. Five or more persons are required as incorporators. G.S. 53-2.

If and when the Commissioner of Banks certifies that the proposed corporation, if formed, will be lawfully entitled to commence the business of banking, the Secretary of State, upon receipt of such certificate, shall record the certificate of incorporation in his office, and thereupon *"the said persons* shall be a body politic and corporate under the name stated in such certificate." (Our italics) G.S. 53-5, G.S. 53-4.

G.S. 53-5 contains this provision: "The charter of any bank which fails to complete its organization and open for business to the public within six months after the date of filing its certificate of incorporation with the Secretary of State shall be void: Provided, however, the Commissioner of Banks may for cause extend the limitation herein imposed." This limitation, in our opinion, applies only in the event "the said persons" have become "a body politic and corporate" and the certificate of incorporation has been recorded and issued. It is noted that appellees so contend.

G.S. 53-4 requires that the Commissioner of Banks, before issuing such certificate to the Secretary of State, "shall at once examine into all the facts connected with the formation of such proposed corporation, including its location and proposed stockholders, . . ." In so doing, the Commissioner of Banks is to determine whether the proposed bank complies with legislative standards. *Pue v. Hood, Comr. of Banks, supra.*

G.S. 53-4 contains this provision: "But the Commissioner of Banks may refuse to so certify to the Secretary of State, if upon examination and investigation he has reason to believe that the proposed corporation is formed for any other than legitimate banking business, or that the character, general fitness, and responsibility of the persons proposed as stockholders in such corporation are not such as to command the confidence of the community in which said bank is proposed to be located; or that the public convenience and advantage will not be promoted by its establishment, or that the name of the proposed corporation is likely to mislead the public as to its character or purpose; or if the proposed name is the same as one already adopted, or appropriated by an existing bank in this State, or so similar thereto as to be likely to mislead the public."

. Thus, if the certificate of incorporation complies with statutory requirements in all other respects, the authority of the Commissioner of Banks to refuse to issue such certificate to the Secretary of State must be based on a finding adverse to the proposed banking corpora-

tion in respect of one or more of the legislative standards defined in the quoted portion of G.S. 53-4. ". . . the discretion vested in the Commissioner of Banks bears only upon the question whether certain conditions exist justifying the creation of the proposed bank under the terms and procedure laid down in the statute." *Pue v. Hood, Comr. of Banks, supra.*

G.S. 53-92, as amended by Chapter 1209, Session Laws of 1953, in pertinent part, provides:

"The Commissioner of Banks shall act as the executive officer of the Banking Commission, but the Commission shall provide, by rules and regulations, for hearings before the Commission upon any matter or thing which may arise in connection with the banking laws of this State upon the request of any person interested therein, and review any action taken or done by the Commissioner of Banks.

"The Banking Commission is hereby vested with full power and authority to supervise, direct and review the exercise by the Commissioner of Banks of all powers, duties, and functions now vested in or exercised by the Commissioner of Banks under the banking laws of this State; any party to a proceeding before the Banking Commission may, within twenty days after a final order of said Commission and by written notice to the Commissioner of Banks, appeal to the Superior Court of Wake County for a final determination of any question of law which may be involved. The cause shall be entitled 'State of North Carolina on Relation of the Banking Commission against (here insert name of appellant)'. It shall be placed on the civil issue docket of such court and shall have precedence over other civil actions. In event of an appeal the Commissioner shall certify the record to the clerk of Superior Court of Wake County within fifteen days thereafter."

Under G.S. 53-4 and G.S. 53-92, construed *in pari materia,* any decision made by the Commissioner of Banks in the exercise of the responsibility and authority conferred upon him by G.S. 53-4 is subject to review by the Commission upon application by any adversely affected interested person. However, upon review of a decision of the Commissioner of Banks, with reference to a certificate of incorporation of a proposed banking corporation otherwise in compliance with statutory requirements, the Commission has no authority to direct the Commissioner of Banks to refuse to issue a certificate of approval except on a finding adverse to the proposed banking corporation in respect of one or more of the legislative standards defined in the quoted portion of G.S. 53-4. Needless to say, such finding or determination must be made in good faith, not capriciously or arbitrarily. *Pue*

*v. Hood, Comr. of Banks, supra; Bank of Italy v. Johnson* (Cal.), 251 P. 784; *S. v. Morehead* (Neb.), 155 N.W. 879; *Leuhrs v. Spaulding* (Idaho), 328 P. 2d 582; *Wall v. Fenner* (S.D.), 76 N.W. 2d 722; *Dakota Nat. Ins. Co. v. Commissioner of Insurance* (N.D.), 54 N.W. 2d 745; *Vale v. Messenger* (Iowa), 168 N.W. 281.

Appellees contend, and rightly so, that neither the Commissioner of Banks nor the Commission is authorized to require, as a prerequisite for the issuance of a certificate of approval, that the proposed banking corporation shall obtain insurance of its deposits with the Federal Deposit Insurance Corporation. *Verhelle v. Eveland* (Mich.), 81 N.W. 2d 397. However, inability to obtain such insurance, together with all circumstances relating to the disapproval of an application therefor, may be considered by the Commissioner of Banks and by the Commission, along with all other relevant facts and circumstances, in determining whether the proposed banking corporation meets the legislative standards defined in the quoted portion of G.S. 53-4.

Neither W. W. Jones, former Commissioner of Banks, nor Benjamin R. Roberts, present Commissioner of Banks, has certified to the Secretary of State that the proposed corporation, if formed, will be lawfully entitled to commence the business of banking. Plaintiffs' action is for a writ of *mandamus* requiring the present Commissioner of Banks to so certify.

Approval or disapproval of a certificate of incorporation of a proposed banking corporation by the Commissioner of Banks and the Commission is necessarily based on the facts existent as of the time such determinations are made. If approved, the statutes contemplate that the Commisioner of Banks will *then* certify his approval to the Secretary of State. It may be conceded that, upon the facts established by the court's findings, the persons named as incorporators were then entitled to such certificate of approval. In the view most favorable to plaintiffs, the former Commissioner of Banks did not so certify at that time because, in his desire to cooperate with plaintiffs, he deferred certification to avoid application of the said six months limitation in G.S. 53-5. Suffice to say, it does not appear that plaintiffs ever requested the former Commissioner of Banks to so certify; and their demand that the present Commissioner of Banks so certify was not made until October 27, 1958.

Plaintiffs seek to compel the defendant Commissioner of Banks to certify *his* approval of a certificate of incorporation dated March 17, 1955, not on the basis of any investigation and determinations made by him in the light of present conditions but solely on the basis of

an investigation and determination made by the former Commissioner of Banks and the Commission in 1955 in the light of conditions then existing. Their position assumes that they acquired a vested right in the determinations made in 1955 and that neither the present Commissioner of Banks nor the Commission may now determine whether under present conditions the proposed banking corporation meets the legislative standards prescribed in G.S. 53-4. We are of opinion, and so hold, that plaintiffs did not acquire such vested right in the determinations made in 1955. Rather, pending actual certification by the Commissioner of Banks, the matter remained *in fieri;* and the Commissioner of Banks and the Commission were and are now at liberty to determine whether in the light of existing conditions such certification should be made.

The refusal of defendant Commissioner of Banks to certify approval of the certificate of incorporation of March 17, 1955, was and is subject to review by the Commission as provided in G.S. 53-92. Plaintiffs seek a determination of their legal right in this original action rather than upon appeal from such decision as the Commission might make. If permitted, they would by-pass the Commission, notwithstanding G.S. 53-92 confers upon the Commission full authority "to supervise, direct and review" the actions of the Commissioner of Banks.

". . . the issuance of a writ of *mandamus* is an exercise of original and not appellate jurisdiction . . . and is never used as a substitute for an appeal." *Pue v. Hood, Comr. of Banks, supra; Hospital v. Wilmington,* 235 N.C. 597, 70 S.E. 2d 833; *Realty Co. v. Planning Board,* 243 N.C. 648, 92 S.E. 2d 82.

"*Mandamus* lies only to enforce a clear legal right and will be issued only where there is no other legal remedy." *Hospital v. Wilmington, supra,* and cases cited; 34 Am. Jur., Mandamus § 42; 55 C.J.S., Mandamus § 17.

"Mandamus is very generally described as an extraordinary remedy in the sense . . . that it can be used only in cases of necessity where the usual forms of procedure are powerless to afford relief; where there is no other clear, adequate, efficient, and speedy remedy." 55 C.J.S., Mandamus § 2 (c); *Edgerton v. Kirby,* 156 N.C. 347, 72 S.E. 365.

In our view, the remedy provided by G.S. 53-92 afforded plaintiffs a clear and adequate procedure for the full determination of their legal rights. Absent an attempt to avail themselves of the procedure so provided, they are not entitled in this original action to the extraordinary writ (of *mandamus*) sought herein. Their clear legal

right is to have the Commission review the decision of defendant Commissioner of Banks as provided in G.S. 53-92.

For the reasons stated, the judgment of the court below is reversed. Reversed.

RODMAN, J., took no part in the consideration or decision of this case.