STATE OF NORTH CAROLINA ON RELATION OF THE BANKING COMMISSION, PLAINTIFF APPELLEE v. CITICORP SAVINGS INDUSTRIAL BANK OF NORTH CAROLINA (PROPOSED), DEFENDANT-CROSS-APPELLANT AND APPELLANT v. THE NORTH CAROLINA BANKERS ASSOCIATION, INC., INTERVENOR/PLAINTIFF-APPELLANT

No. 8410SC591

(Filed 7 May 1985)

1. Banks and Banking § 1.1— industrial bank—no vested right to operate

Citicorp, a subsidiary of a Delaware corporation, did not have a vested right to operate an industrial bank because it had filed an application to establish an industrial bank before the enactment of the statute prohibiting the acquisition or control of an industrial bank by any company, G.S. 53-229. Although Citicorp had the right to have the applicable law applied to it, it did not have a right that the law not be changed.

2. Banks and Banking § 1.1— industrial bank—control by any company prohibited—constitutionality of statute

The statute proscribing the acquisition or control of an industrial bank by any company, G.S. 53-229, does not discriminate against out-of-state bank holding companies in violation of the commerce clause, Art. I, § 8, of the U.S. Constitution. Nor does the statute violate Art. I, §§ 19, 32 and 34 of the N.C. Constitution.

APPEALS by applicant Citicorp Savings Industrial Bank of North Carolina (Proposed) and by intervenor North Carolina Bankers Association, Inc. from *Beaty, Judge.* Judgment entered 13 January 1984 in Superior Court, WAKE County. Heard in the Court of Appeals 5 February 1985.

This appeal arises from a ruling by the State Banking Commission on an application by Citicorp Savings Industrial Bank of North Carolina (Proposed) to establish an industrial bank in Charlotte, North Carolina. On 26 May 1983 Citicorp, a wholly owned subsidiary of a Delaware corporation, applied to establish an industrial bank. On 13 July 1983 the Commissioner of Banks recommended the approval of the application and referred the matter for review by the State Banking Commission.

On 20 July 1983 the matter was heard by the State Banking Commission. Citicorp presented evidence and the North Carolina Bankers Association was allowed to make a motion to continue although it was not a party to the proceedings. The matter was continued and on 22 August 1983 a second hearing was held. The Association presented evidence in opposition to the application and Citicorp presented additional evidence. At the conclusion of the hearing the members of the Commission who were present deliberated in closed session and then announced they had voted to deny the application. On 21 September 1983 the Commission met and adopted an order denying the application.

Citicorp petitioned the Superior Court to review the decision of the Commission and reverse it. The Association intervened in the proceedings in Superior Court. The Superior Court held that there was not a quorum at any of the meetings of the Commission and remanded the matter for further hearings by the Commission. Citicorp and the Association appealed. The Commission filed a motion in this Court which asks that the appeal be dismissed on the ground the issues have become moot after the adoption of G.S. 53-229.

*Attorney General Edmisten, by Special Deputy Attorney General Reginald L. Watkins, and Chief Counsel of the State Banking Commission Robert L. Anderson, for the State on Relation of the Banking Commission for appellee State Banking Commission.*

*Jordan, Brown, Price & Wall, by John R. Jordan, Jr., Robert R. Price, and Henry W. Jones, Jr., and General Counsel Edmund O. Aycock for intervenor appellant North Carolina Bankers Association, Inc.*

*Fleming, Robinson, Bradshaw, and Hinson, by Robin L. Hinson, A. Ward McKeithen, Dan T. Coenen and Mark W. Merritt, and Leboeuf, Lamb, Leiby and McRae, by Joseph E. Johnson, for applicant appellant Citicorp Savings Industrial Bank of North Carolina (Proposed).*

WEBB, Judge.

G.S. 53-229 which became effective on 7 July 1984 while this case was on appeal to this Court provides in part:

> Notwithstanding any other provision of this Article or any other provision of the General Statutes of this State, no bank holding company or any other company may acquire or control any banking institution that:
>
> (1) Has offices located in this State; and
>
> (2) Is not a bank as defined in G.S. 53-226(1) of this Article.
>
> . . . .
>
> Provided, the provisions of G.S. 53-229 shall not apply to applications by any company which is chartered by the Congress of the United States and which application is pending before the Commissioner on July 7, 1984.

G.S. 53-226(1) defines a bank as an institution that accepts demand deposits, which the proposed industrial bank could not do. It would be a banking institution which is not a bank as defined in G.S. 53-226(1). Citicorp's parent corporation is not a corporation chartered by the Congress. The proviso clause does not apply to it. It is barred from owning a bank in this state if G.S. 53-229 applies to it.

[1] Citicorp argues that G.S. 53-229 applies prospectively and it is not barred from operating in this state. We do not believe the question of whether the statute applies prospectively or retroactively is determinative. Citicorp had not been given permission to operate an industrial bank at the time G.S. 53-229 became effective. Assuming the statute was intended to apply prospectively at the time of its effective date, Citicorp had the right to have the applicable law applied to it. It did not have a right that the law not be changed. When the law was changed so that Citicorp no

longer has the right to operate an industrial bank in this state it may not have its application approved. *See Lee v. Penland-Bailey Co.*, 50 N.C. App. 498, 274 S.E. 2d 348 (1981) for a case which holds the prospective application of a statute can require remedial action for something that occurred before the adoption of the statute.

Citicorp replies on *Bolick v. American Barmag Corp.*, 306 N.C. 364, 293 S.E. 2d 415 (1982); *Smith v. Mercer*, 276 N.C. 329, 172 S.E. 2d 489 (1970) and *Wilson v. Anderson*, 232 N.C. 212, 59 S.E. 2d 836 (1950) and argues that at the time the application was filed it had a vested right to have the then applicable law applied which gave it the right to operate an industrial bank in this state. *Wilson* deals with intestate succession rights of adopted children. It holds that a change in the intestate succession act did not apply to persons adopted before the effective date of the change. We do not believe it is applicable to this case. *Bolick* and *Smith* involve tort claims. We believe there is a distinction between a vested tort claim and the right not to have a statute changed. A tort claim is a form of property right. The right to operate a bank is governed by statute. No one has the right for the General Assembly not to change a law. Citicorp did not have a vested right to operate a bank when G.S. 53-229 was adopted.

[2] Citicorp contends that if G.S. 53-229 does apply it is unconstitutional under Article I, sec. 8 of the Constitution of the United States which provides in part

> The congress shall have the power
>
> . . . .
>
> (3) To regulate commerce with foreign nations, and
>
> among the several states and among the indian tribes.

The Commerce clause has been interpreted to limit the power of the states to erect barriers against interstate trade except as allowed by Congress. See *Lewis v. BT Investment Managers, Inc.*, 447 U.S. 27, 64 L.Ed. 2d 702, 100 S.Ct. 2009 (1980).

Citicorp, relying on *Lewis*, argues that although G.S. 53-229 is neutral on its face its purpose and practical effect is to keep out of state bank holding companies from acquiring or operating industrial banks in this state. Although the statute applies to

North Carolina bank holding companies Citicorp argues that it has no practical effect as to them because they can own full service banks. Citicorp says that for this reason the only purpose and effect of G.S. 53-229 is to exclude out of state bank holding companies from acquiring industrial banks in this state, which violates the commerce clause.

We do not believe *Lewis* governs this case. In *Lewis* the State of Florida adopted a statute which prohibited out of state bank holding companies from owning or controlling a business furnishing investment advisory services to the general public. The United States Supreme Court held that any state interest that may be served was not sufficient under the commerce clause to justify prohibiting out of state bank holding companies from operating a business in Florida which an in state bank holding company is allowed to own and operate. The Court also held that Congress had not authorized the State to make this type of discrimination. In this case the General Assembly has proscribed the acquisition or control of an industrial bank by any company. This act does not discriminate against out of state bank holding companies.

The General Assembly has the power to regulate the banking industry in this state. *See Pue v. Hood, Com'r of Banks*, 222 N.C. 310, 22 S.E. 2d 896 (1942). It has proscribed the acquisition or control of an industrial bank by any company, which it has the power to do. If out of state holding companies may be the only companies who want to own industrial banks in this state we do not believe this prevents the General Assembly from legislating as to this legitimate state interest. Nor do we believe, as Citicorp argues, that the fact that the Bankers Association may have supported the legislation makes it unconstitutional.

Citicorp contends finally, based on *In re Hospital*, 282 N.C. 542, 193 S.E. 2d 729 (1973), that G.S. 53-229 violates Article I, Sections 19, 32, and 34 of the Constitution of North Carolina. In *Hospital* our Supreme Court held that those sections of the North Carolina Constitution were violated by the requirement of a certificate of need before a corporation could construct a hospital. *Hospital* did not mention *Pue v. Hood, Com'r of Banks, supra.* Whatever precedent *Hospital* may be for the regulation of other types of business we believe *Pue* is still the law as to the right of

the State of North Carolina to regulate the banking industry. *Pue* was not overruled by *Hospital.*

We have held that Citicorp does not have the right to own or operate an industrial bank in this state. We do not pass on other assignments of error brought forward by the parties. For the reasons stated in this opinion we remand to the Superior Court for the purpose of dismissing Citicorp's petition.

Remanded.

Judge PHILLIPS concurs.

Judge PARKER concurs in the result.