## VERHELLE v. STATE BANKING COMMISSIONER.

1. BANKS AND BANKING—APPROVAL OF APPLICATION TO ORGANIZE STATE BANK—PARTIES.

   Applicants to organize a State bank under the financial institutions act are parties of interest within the purview of sections of the act and entitled to maintain suit to secure approval of their application by the State banking commissioner (CL 1948, §§ 487.21, 487.26).

---

REFERENCES FOR POINTS IN HEADNOTES
[2, 3] 7 Am Jur, Banks § 20.
[5, 6] 7 Am Jur, Banks § 14.
[5] 7 Am Jur, Banks §§ 27, 28.

2. SAME—INSURANCE OF DEPOSITS.

There is no law which compels any bank to have its deposits insured.

3. SAME—APPLICATION TO ORGANIZE BANK—INSURANCE OF DEPOSITS.

The State banking commissioner exceeded his powers in requiring applicants for permission to organize a bank to secure insurance of deposits before passing upon the application (CL 1948, § 487.21 *et seq.*).

4. SAME—ORGANIZATION OF BANK—LIKELIHOOD OF SUCCESS.

The term "likelihood of success" as used in provision of the financial institutions act relative to applications for purpose of organization of a bank means probability of success or a favorable chance of success (CL 1948, § 487.21 *et seq.*).

5. SAME—DISCRETION OF BANKING COMMISSIONER—DEPOSIT INSURANCE.

It was an abuse of discretion for the State banking commissioner to refuse to pass upon application to organize a bank, where he was satisfied with the fitness and responsibility of the plaintiffs as applicants and of the necessity for the organization of the bank but not satisfied of the likelihood of its successful operation solely because the applicants had not secured membership in the Federal Reserve System nor secured Federal deposit insurance, there being no testimony that a bank would not be successful unless it had deposit insurance.

6. SAME—APPROVAL OF APPLICATION TO ORGANIZE BANK.

The State banking commissioner's failure to approve an application to organize a bank is construed as a disapproval of same, sufficient to invoke the powers of a chancery court.

Appeal from Ingham; Coash (Louis E.), J. Submitted October 11, 1956. (Docket No. 87, Calendar No. 46,942.) Decided February 28, 1957.

Bill by Joseph F. Verhelle and others against Maurice C. Eveland, Commissioner of the State Banking Department, State of Michigan, to secure approval of application for the formation of a bank. Decree for plaintiffs. Defendant appeals. Affirmed.

*John W. Babcock* and *Crawford, Sweeney, Dodd & Kerr,* for plaintiffs.

*Thomas M. Kavanagh,* Attorney General, *Edmund E. Shepherd,* Solicitor General, *Maurice M. Moule* and *Burton P. Daugherty, Jr.,* Assistants Attorney General, for defendant.

SHARPE, J. The bill of complaint in this cause was filed under the authority granted in section 21 of the Michigan financial institutions act (CL 1948, § 487.21 [Stat Ann 1943 Rev. § 23.739]). Plaintiffs are residents of the State of Michigan and are applicants in an application for permission to organize a bank under the laws of the State of Michigan, including PA 1937, No 341, known as the Michigan financial institutions act; and are parties of interest within the purview of sections 21 and 26, of the Michigan financial institutions act (CL 1948, §§ 487.21, 487.26 [Stat Ann 1943 Rev §§ 23.739, 23.754]).

Defendant Maurice C. Eveland is commissioner of the State banking department of the State of Michigan. The record shows that on November 24, 1954, and again by amendment on May 5, 1955, plaintiffs joined in making a written application to the banking commissioner for permission to organize a bank under the provisions of chapter 3 of the Michigan financial institutions act for the purpose of carrying on a general banking business in the city of Detroit, Wayne county, Michigan; that accompanying such application plaintiffs furnished and submitted to the banking department of the State of Michigan evidence that they had met the statutory conditions and requirements necessary to accompany said application; that subsequent to the filing of the application the defendant orally advised some of plaintiffs that he was satisfied as to the responsibility and fitness of the applicants, of the necessity for the or-

ganization of the bank in the city of Detroit, and the likelihood of its successful operation, but insisted that he would impose 2 other conditions before he would act upon such application, namely:

"(1) That he be supplied with the names of the prospective officers of said proposed bank, and (2) that he be supplied with assurance from either of 2 corporations doing business under the laws of the United States, namely, the Federal Reserve System and the Federal Deposit Insurance Corporation, that either by membership in the Federal Reserve System or by becoming an insured bank in the Federal Deposit Insurance Corporation the deposits of said proposed Public Bank would be insured when made with such proposed bank."

Plaintiffs did submit to defendant the names of persons who would be officers of the proposed bank. The defendant filed a motion to dismiss plaintiffs' bill of complaint, which contains the following:

"That the plaintiffs have an adequate remedy at law in the nature of mandamus.

"That the action presents no case or controversy inasmuch as the plaintiffs' bill of complaint is premature. In support of said ground for dismissal, defendant sets forth the following facts:

"Defendant commissioner has not disapproved the application of the above named plaintiffs for a bank charter pursuant to section 26 of the Michigan financial institutions act; but has requested that the said plaintiffs assure him that they will insure deposits of the proposed bank by either membership in the Federal Reserve System or becoming an insured bank in the Federal Deposit Insurance Corporation; that this assurance is necessary in order that this defendant commissioner may be satisfied of the likelihood of the successful operation of the proposed bank; that subsequent to the institution of this suit this defendant received a letter from the vice-president of the Federal Reserve Bank

of Chicago advising him that the board of governors of the Federal Reserve System has denied the application of the above-named plaintiffs for membership in the Federal Reserve System."

Subsequently an order was entered denying defendant's motion to dismiss. Defendant thereupon filed an answer to plaintiffs' bill of complaint, the substance of which is contained in the following:

"The Michigan financial institutions act authorizes him to use his discretion in granting a bank charter to applicants, and that a requirement that applicant assure him that they can obtain Federal insurance for deposits in such proposed bank is not an abuse of discretion but goes to the question of the condition of likelihood of successful operation. * * *

"That the condition that he imposed to satisfy him that the proposed bank would be likely to have a successful operation was that he be assured by the applicants that either by membership in the Federal Reserve System or by becoming an insured bank in the Federal Deposit Insurance Corporation, the deposits of said proposed Public Bank would be insured. * * *

"This defendant denies that his requirement of assurance to obtain Federal insurance was a demand, regulation, ruling, order or finding within the meaning of section 21 of the Michigan financial institutions act, and further denies that said condition was unlawful, unreasonable, arbitrary and capricious beyond the authority and power of this defendant under law."

The cause came on for trial, and subsequently a decree was entered which provided, in part, as follows:

"The above entitled cause having come on for hearing upon the pleadings filed and upon proofs taken in open court, and upon due consideration thereof, as well as the arguments of counsel, the court finds that the material allegations in the com-

plaint of the plaintiffs are true; that the defendant commissioner of the State banking department of the State of Michigan is satisfied with the fitness and responsibility of the plaintiffs as applicants for permission to organize a bank under the laws of Michigan, is satisfied of the necessity for the organization of the bank, and is satisfied (subject only to a condition which the court finds to be unlawful and beyond his powers) with the likelihood of its successful operation; and that, accordingly, the plaintiffs are entitled to have their application for permission to organize in the city of Detroit the bank to be known as the Public Bank approved."

In an opinion the trial court stated:

"The commissioner has testified that he was satisfied with everything in connection with this. It is my opinion that he is reading something into the statute which is not present. There is nothing in the act that provides that the commissioner shall be satisfied as to Federal deposit insurance or that they become a member of the Federal reserve before he has to approve or can approve their application.
\* \* \*

"As you know, I am not stating that there is going to be a new bank. This is not that kind of an action. This is only an action to allow the plaintiffs to proceed with their incorporation. Then they can apply for Federal reserve and possibly the Federal deposit insurance."

Defendant appeals and urges that the requirement of the banking commissioner that he be assured that the deposits of a proposed bank be insured by the Federal Deposit Insurance Corporation or by membership in the Federal Reserve System before he approves an application is not unlawful, unreasonable or arbitrary. Plaintiffs urge that:

"There is no law, no rule, no regulation, no commandment, which compels any bank to have its de-

posits insured by the Federal Deposit Insurance Corporation or to have it become a member of the Federal Reserve System. The choice to do so is a privilege of the board of directors of the bank and usurpation of that prerogative of the said directors is not a power vested in the State banking commissioner whether he attempts that usurpation under the guise of determining likelihood of successful operation or otherwise.  *  *  *

"The procedural steps provided in the act (CL 1948, § 487.21 *et seq.* [Stat Ann 1943 Rev § 23.739 *et seq.*]) for the organization of a State bank are as follows:

"1. File with the commission an application for permission to organize signed by at least 5 organizers; Secs. 26, 23;

"2. Publish a notice that such application has been made; Sec. 25;

"3. Commission's *notice to applicants* of approval or disapproval; Sec. 26; Michigan Administrative Code (1954), R 487.202.

"4. *If such application is approved,* file with the commission articles of incorporation; Sec. 27.;

"5. Upon approval of the articles of incorporation, and within 30 days thereafter, notify the commission that its capital and surplus has been paid in and that it has *complied with all the provisions of this act* required to be complied with before a bank shall be authorized to commence the business of banking; Sec. 31;

"6. The commission, thereupon, shall forthwith examine into the condition of the bank to determine,

"(a) the amount of money paid in on account of capital and surplus;

"(b) the name and place of residence of each of the directors;

"(c) the amount of capital stock of which each is the owner in good faith; and

"(d) whether such bank has complied with *all of the provisions of this act* compliance with which is

required to entitle it to engage in the business of banking; Sec. 31."

We are in accord with plaintiffs' claim that there is no law which compels any bank to have its deposits insured. It follows that the banking commissioner exceeded his powers in making plaintiffs secure insurance before passing upon plaintiffs' application.

In the case at bar the record shows that the banking commissioner is satisfied with the fitness and responsibility of the plaintiffs as applicants for permission to organize a bank under the laws of Michigan, is satisfied of the necessity for the organization of the bank, but was not satisfied of its successful operation, based upon the fact that they had not assured him that they were going to get Federal insurance.

The term "likelihood of success" has never been construed by our Court. In our opinion this term means probability of success or a favorable chance of success. The record shows that the witnesses who testified for defendant stated that establishing a bank would be easier and probably more successful with deposit insurance, but no witness testified that a bank would not be successful unless it had deposit insurance. We are in accord with the finding of fact of the trial court that it was an abuse of discretion on the part of the banking commissioner to refuse to pass upon plaintiffs' application until they had secured Federal deposit insurance or membership in the Federal Reserve System.

It is also urged by defendant that the bill of complaint was filed prematurely because there was no formal action taken by the banking commissioner on plaintiffs' application to organize a bank. The record shows that the banking commissioner never approved plaintiffs' application. Failure to act up-

on an application can be and should be construed as a disapproval of the same, sufficient to invoke the powers of a chancery court.

The decree is affirmed, with costs.

DETHMERS, C. J., and SMITH, KELLY, CARR, and BLACK, JJ., concurred.

EDWARDS and VOELKER, JJ., took no part in the decision of this case.