JOHN MILLER SPARKS v. UNION TRUST COMPANY OF SHELBY.

(Filed 7 March, 1962.)

**1. Pleadings § 12—**

A demurrer admits the truth of factual averments well stated in the complaint and such relevant inferences of fact as may be deduced therefrom, but not legal inferences or conclusions of law.

**2. Banks and Banking § 1—**

A bank organized and created under the statutes of this State has only such powers and duties as are expressly granted by statute or are fairly incidental thereto.

**3. Banks and Banking § 3—**

A bank is not under duty to warn a prospective investor of the financial condition of a depositor of the bank.

**4. Same—**

Allegations to the effect that an investor went to an officer of the bank and disclosed his plans to borrow money to erect a building to be leased to a certain person, that the officer of the bank was withholding bad checks of such person in a large amount which if released would result in insolvency of such person, and that the bank officer failed to disclose to the investor the fact of such person's insolvency, *is held* insufficient to state a cause of action against the bank, since the bank was under no duty to disclose the financial condition of one of its depositors.

**5. Banks and Banking § 2—**

Allegations that the manager of a branch of a bank withheld from circulation bad checks in a large sum for a depositor, without allegations that the managing officers of the bank had any knowledge that he was so withholding checks, *are held* insufficient to state a cause of action against the bank, since the acts of the manager were *ultra vires*, and the bank is not chargeable with notice thereof, such acts not having been done in the interest of the bank.

**6. Principal and Agent § 8—**

The rule that the knowledge of the agent will be imputed to the principal does not apply when the circumstances are such as to disclose that the

agent is acting in his own personal interest and adversely to that of the principal, or has a motive in concealing the facts from the principal.

WINBORNE, C.J., not sitting.

APPEAL by plaintiff from an order of *Clark, S.J.*, entered at November 1961 Term of CLEVELAND sustaining a demurrer *ore tenus* to plaintiff's complaint on the ground that the complaint does not state facts sufficient to constitute a cause of action.

*Henry M. Whitesides for plaintiff appellant.*
*D. Z. Newton for defendant appellee.*

PARKER, J.   The complaint alleges in substance, except when quoted:
Defendant is a state bank with its principal office in the town of Shelby. It has a branch bank in the town of Lawndale of which John Francis Carpenter was manager. At all times mentioned Carpenter was an agent of defendant, and was acting within the scope of his employment. On 1 October 1956 plaintiff went to Carpenter in his capacity as manager of defendant's branch bank in Lawndale, and stated to him in detail his desire to borrow money to erect a building to be leased for a term of five years to Yates Williams. He informed Carpenter of his proposed plan "in a confidential nature" solely because Carpenter was manager of defendant's branch bank in Lawndale. During the conversation Carpenter knew of his own knowledge and in his capacity as manager of defendant's branch bank in Lawndale, that he, Carpenter, as manager of the defendant's branch bank in Lawndale, was retaining the sum of $152,469.12 in bad cheques drawn by Yates Williams, and if these cheques were put in circulation, it would render Williams insolvent. Carpenter as manager of defendant's branch bank in Lawndale knew, or should have known, that Williams was being presented to the general public as a wealthy and prosperous businessman. In fact, by reason of the acts of defendant bank through its branch manager in Lawndale, defendant was allowing Williams to present himself as a prosperous businessman, when he was insolvent in the sum of $152,469.12, which was being concealed by Carpenter as manager of defendant's branch bank in Lawndale.

If defendant by its branch manager Carpenter had informed plaintiff of the true financial condition of Williams, he would not have entered into a long-term lease with Williams. If defendant had properly run its branch bank at Lawndale, Williams would not have been able to hold himself out to the general public as being in sound financial condition, when he was insolvent.

When defendant was advised through its branch manager Carpenter

of plaintiff's proposed plan above stated, and was in a position to prevent him from harm as a result of defendant's misconduct in retaining Williams' cheques, which had been occurring for ten years prior to 1 October 1956, it refused to divulge such information to plaintiff, although it knew full well he would be financially injured as a result of its secretiveness. Defendant through its branch manager Carpenter knew, or should have known, that plaintiff's proposed plans were based upon mistaken impressions as to the financial condition of Williams, and that defendant had sole knowledge of Williams' insolvency and did not impart it to plaintiff, when plaintiff was about "to render himself to a financial loss."

Plaintiff erected a special building for Williams, and leased it to him for five years. At that time plaintiff had an existing lease with Williams, which was entered into in September 1956, when the financial condition of Williams was represented to the general public to be good, said representations being made possible solely by defendant's illegal acts.

In October or November 1957 the acts of Carpenter became known, and the assets of Williams were seized. As a result thereof Williams due to insolvency was unable to make any payments of rent on his two leases with plaintiff, and plaintiff has been damaged thereby in the sum of $1,750.00.

Defendant knew, or should have known, the loss to plaintiff was the natural and probable resulting consequence of its acts. "Defendant when consulted in a confidential manner by the plaintiff prior to entering into said second lease and building said building especially for said lease should have, could have, and was morally and legally responsible to notify the plaintiff of his impending predicament, all of which the defendant, by and through its agent John Francis Carpenter, did not do."

Defendant's demurrer *ore tenus*, for the purpose, admits the truth of factual averments well stated, and such relevant inferences as may be deduced therefrom, but not legal inferences or conclusions of law asserted by the pleader. *Lumber Co. v. Hunt*, 251 N.C. 624, 112 S.E. 2d 132.

It would seem from a study of the complaint and plaintiff's brief that he has attempted to allege a case of damages for defraud and deceit against defendant bank for not informing him or concealing from him the alleged fact that Carpenter, manager of its branch bank in Lawndale, was retaining $152,469.12 in worthless cheques of Yates Williams and thereby permitted Williams to hold himself out as a prosperous businessman, when in fact he was insolvent.

Defendant is a state bank organized and created under the pro-

visions of G.S. Chapter 53, Article 2, Creation of Banks. Its powers and duties are set forth in Article 6 of the same chapter. State banks have no powers beyond those expressly granted, or those fairly incidental thereto, in Article 6 of Chapter 53 of G.S. *Pue v. Hood, Comr. of Banks,* 222 N.C. 310, 22 S.E. 2d 896; *Young v. Roberts,* 252 N.C. 9, 112 S.E. 2d 758.

"Banks are under no duty at law to warn the investing public as to the financial condition of their depositors." *Cunningham v. Merchants Nat. Bank* (C.C.A. 1st), 4 F. 2d 25, 41 A.L.R. 529, cert. denied in 268 U.S. 691, 69 L. Ed. 1160 (case growing out of criminal financial career of Charles Ponzi). The Court said in *Taylor v. Commercial Bank,* 174 N.Y. 181, 66 N.E. 726, 62 L.R.A. 783, 95 Am. St. Rep. 564: "Nor is it within the line of the duty of a cashier to disclose the condition of the accounts of the customers of a bank whenever inquiry is made as to their responsibility."

What this Court said in *Bank v. Finance Co.,* 192 N.C. 69, 133 S.E. 415, 48 A.L.R. 519, is apposite: "A national bank has no power to engage in the business of furnishing to depositors or to others gratuitiously or for compensation, direct, or indirect, information as to the solvency, or condition or reputation, financial or otherwise, of persons, firms or corporations. An agreement to furnish such information is *ultra vires. . . .*" This is in accord with the general rule. Anno. 48 A.L.R. 529.

In Zollmann's Banks and Banking, Per. Ed., Vol. 5, sec. 3413, pp. 379-380, it is stated: "Depositors have the right of secrecy. A bank therefore is under an implied obligation to keep secret its records of accounts, deposits, and withdrawals."

The factual averments in the complaint are that Carpenter, manager of defendant's branch bank at Lawndale, was holding worthless cheques of Yates Williams on the day plaintiff talked with him as to his plans of erecting a building for lease to Williams in the sum of $152,469.12, and had been holding worthless cheques of Williams for ten prior years. Carpenter's acts in doing so were *ultra vires,* because not authorized or permitted by G.S. Chapter 53, Article 6, powers and duties of state banks. There is no allegation of fact that defendant bank and its other officers and directors knew anything of Carpenter's holding Williams' worthless cheques; in fact, it is a fair inference that Carpenter concealed such information from them. In this respect it may not be amiss to say that plaintiff states in his brief: "The deception [Carpenter's holding Williams'-worthless cheques] was uncovered by a bank audit and both Carpenter and Williams sent to prison." There is no allegation in the complaint that plaintiff was a customer of defend-

ant. It seems a fair inference from the language of the complaint that Williams was a customer and depositor of defendant bank. According to the factual allegations of the complaint, there was no fiduciary relation between plaintiff and defendant bank. *Abbitt v. Gregory,* 201 N.C. 577, 598, 160 S.E. 896, 906.

We are of the opinion that there is nothing in the allegations of fact in the complaint that amounted to constructive notice to defendant bank that its branch manager in Lawndale was engaged in independent, fraudulent, and *ultra vires* transactions with Yates Williams which it was to Carpenter's interest to conceal, and which was no part of the lawful business of defendant bank and was not in its interest, and that defendant bank is not chargeable with Carpenter's uncommunicated knowledge of such facts. *Bank v. Burgwyn,* 110 N.C. 267, 14 S.E. 623, 17 L.R.A. 326; *Roper v. Ins. Cos.,* 161 N.C. 151, 157, 76 S.E. 869, 872; *Corporation Commission v. Bank,* 164 N.C. 357, 79 S.E. 308; *Anthony v. Jeffress,* 172 N.C. 378, 90 S.E. 414; *Bank v. West,* 184 N.C. 220, 114 S.E. 178; *Bank v. Wells,* 187 N.C. 515, 122 S.E. 14; *Federal Reserve Bank v. Duffy,* 210 N.C. 598, 188 S.E. 82; 7 Am. Jur., Banks, sec. 281. In respect to the well-defined exception to the general rule that knowledge of the agent is imputed to the principal, the Court said in *Federal Reserve Bank v. Duffy, supra:* "Where the conduct of the agent is such as to raise a clear presumption that he would not communicate to the principal the facts in controversy, or where the agent, acting nominally as such, is in reality acting in his own business or for his own personal interest and adversely to the principal, or has a motive in concealing the facts from the principal, this rule does not apply."

Defendant bank was under no duty at law to warn or tell plaintiff of Yates Williams' financial condition. Plaintiff has not alleged a case of fraud and deceit, for "the principle is basic in the law of fraud as it relates to nondisclosure that a charge of fraud is maintainable where a party who knows material facts is under a duty, under the circumstances, to speak and disclose his information, but remains silent." 23 Am. Jur., Fraud and Deceit, sec. 78, p. 854, where many cases in support of the text are cited. Here under the allegations of fact of the complaint there was no legal duty on the part of defendant bank, under the circumstances, to speak to or inform plaintiff about Williams' financial condition.

The averments of plaintiff's complaint, liberally construed pursuant to the provisions of G.S. 1-151, do not state facts sufficient to constitute a cause of action for fraud and deceit against defendant bank,

and further the facts stated are not sufficient to state any cause of action against defendant bank. Consequently defendant's demurrer *ore tenus* to the complaint was properly sustained.

Affirmed.

WINBORNE, C.J., not sitting.