SCHWARTZ, Chief Judge.
On October 17, 1981, Emmett E. McDonald, acting as the personal representative of the estate of Marion Cahill, deceased, wrote a check to himself, individually, on the estate checking account in the Commercial Bank & Trust Company. The instrument contained an obvious variance between the numbers and the written words which indicated the amount of the check. It said:
“Pay to the order of Emmett E. McDonald $10075.00 Ten hundred seventy five_Dollars.” [1]
The bank paid the $10,075.00 sum stated by the numerals to McDonald, who absconded with the funds. Through a successor representative, Yates, who is the appellant here, the estate sued the bank to recover the $9,000.00 difference[2] between that amount and the $1075.00 which was written out. The trial court dismissed the complaint and Yates has appealed. We reverse.
It is clear that the complaint stated a cognizable claim against the bank. Section 673.118, Florida Statutes (1981), provides:
The following rules apply to every instrument:
* * * * * *
(3) Words control figures except that if the words are ambiguous figures control. *727 Under this provision of the UCC, it was clearly improper for the bank to have paid the larger sum stated in numbers, rather than the smaller one unambiguously stated by McDonald’s words. It is, therefore, prima facie liable to the estate for the excess. Dawson v. Andrus, 612 F.2d 1280 (10th Cir. 1980); Western Union Telegraph Co. v. Peoples National Bank in Lakewood, 169 N.J.Super. 272, 404 A.2d 1178 (1979); St. Paul Fire & Marine Ins. Co. v. State Bank of Salem, 412 N.E.2d 103 (Ind.App.1980); McNeese v. State, 596 S.W.2d 906 (Tex.Civ.App.1980); 11 Am.Jur.2d Bills and Notes § 158 (1963).
The bank contends, however, that the estate has not really been damaged by its overpayment. This argument is apparently founded on the supposition that, since McDonald embezzled what was paid him anyway, if the bank had honored the check in the correct amount initially, he could, and presumably would, have simply written an additional $9,000 check to himself to make up the difference and accomplish the same nefarious result. While there may well be some merit to this assertion, see Fulka v. Florida Commercial Banks, Inc., 371 So.2d 521, 525, n. 7 (Fla. 3d DCA 1979), it is obviously in the nature of an affirmative defense, and thus cannot justify the dismissal of the complaint. Sanchez v. Mercy Hospital, 386 So.2d 42 (Fla. 3d DCA 1980); Fincher Motors, Inc. v. Carriage Trade Auto Brokers, Inc., 421 So.2d 673 (Fla. 3d DCA 1982).
Reversed.

. The emphasized material is in McDonald’s handwriting; the remainder is printed.

. The appellant does not claim that the bank is liable merely for paying an estate check to the fiduciary himself. On the facts alleged in the complaint, no such contention could be sustained in the face of Sec. 733.611, Fla.Stat. (1981), which provides:
Except as provided in s. 733.613(1) [which section is inapplicable to this case], a person who in good faith either assists a personal representative or deals with him for value is protected as if the personal representative properly exercised his power. The fact that a person knowingly deals with the personal representative does not alone require the person to inquire into the existence of his power, the limits on his power, or the propriety of its exercise. A person is not bound to see to the proper application of estate assets paid or delivered to the personal representative .... The protection here expressed is not by substitution for that provided in comparable provisions of the laws relating to commercial transactions and laws simplifying transfers of securities by fiduciaries.